IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DAVID ANTHONY PEARSON, JR.,

                Plaintiff,

v.

SERGEANT DENISE BORCHERT,

                Defendant.

OPINION and ORDER

22-cv-343-jdp

---

Plaintiff David Anthony Pearson, Jr., proceeding without counsel, is incarcerated at Green Bay Correctional Institution. Pearson was a pretrial detainee at the La Crosse County Jail when the incident at issue occurred. Pearson proceeds on a Fourteenth Amendment conditions-of-confinement claim based on the allegation that defendant Sergeant Denise Borchert placed him in a restraint chair for 12 hours without bathroom access, which caused him to soil himself. Dkt. 11; Dkt. 43.

Borchert moves for summary judgment. Dkt. 44. As explained more fully below, Pearsons disruptive conduct gave Borchert reason to restrain him. And, even if Borchert's actions were objectively unreasonable, she would be entitled to qualified immunity. I will grant Borchert's motion and dismiss Pearson's Fourteenth Amendment claim with prejudice.

UNDISPUTED FACTS

The court affords litigants proceeding without counsel some leeway, recognizing that their submissions usually lack the formality and polish of the work of a lawyer. But all litigants must comply with the court's orders and rules. *Allen-Noll v. Madison Area Tech. College*, 969 F.3d 343, 349 (7th Cir. 2020). Pearson hasn't strictly complied with the court's summary judgment

procedures, but his response to Borchert's facts, Dkt. 54, is verified and its factual statements are mostly based on his personal knowledge. So, I will treat Pearson's response as a declaration. *See* 28 U.S.C. § 1746(2).

The following facts are undisputed except where noted.

Between late September 2021 and early May 2022, while detained at the La Crosse County Jail, Pearson was found guilty of multiple disciplinary violations based on at least four separate incidents. Dkt. 47-3; Dkt. 47-4. These disciplinary violations included failing to follow a direct order, causing a disturbance, disrupting jail operations, destroying property, assaulting an inmate, threatening to assault staff, threatening to throw urine and feces at staff, threatening another prisoner, possessing a weapon, and resisting staff. *Id.*

On May 11, 2022, Pearson was housed in disciplinary confinement for trying to destroy a camera in another cell. Pearson was holding his arm and a cup through his cell door's food trap. Pearson says that he engaged in that behavior because his cell lacked water access and he wanted some. Defendant Borchert repeatedly ordered Pearson to remove his arm from the trap. Pearson says that he refused to comply with Borchert's orders because she didn't get him water. Pearson says that he started banging the cell door because no one had brought him food or water. Pearson then used his smock to damage the sprinkler, which flooded the cell. Pearson says that he damaged the sprinkler because he lacked water and toilet access. At that time, Borchert and other staff decided to extract Pearson from the cell. After initially refusing, Pearson allowed staff to handcuff him through the trap.

Pearson was taken to a medical observation cell, and Borchert and other sergeants placed him in a restraint chair. Neither party specifies when Pearson was placed in the restraint chair, but Borchert's unrefuted evidence shows that the placement occurred around 5:45 p.m.

*See* Dkt. 47-1 at 1; Dkt. 47-2 at 6; Dkt. 47-5 at 2. Pearson alleges that Borchert put a spit mask on him for no reason, which made it hard for him to breathe. Pearson lifted his knees off the restraint chair, though he attributes this behavior to staff's use of the spit mask and their false accusations that he was resisting.

Once Pearson was secured, staff monitored him every 15 minutes. Likewise, nurses periodically checked the straps, though Pearson says that they were too tight. Pearson alleges that he repeatedly told Borchert and other jail staff that he had to use the bathroom. Borchert left the jail at 10:00 p.m. when her scheduled shift ended.

Pearson was removed from the restraint chair between 1:30 a.m. and 1:50 a.m. the next morning. *See* Dkt. 47-6 at 7; Dkt. 47-2 at 8. Pearson alleges that he told staff that he had urinated and defecated on himself, and he received a new uniform. Dkt. 47-2 at 8.

ANALYSIS

To establish a Fourteenth Amendment conditions-of-confinement claim, Pearson must show that: (1) Borchert made an intentional decision with respect to his conditions of confinement; and (2) Borchert's actions were objectively unreasonable. *See Pittman v. Madison Cnty., Ill.*, 108 F.4th 561, 564 (7th Cir. 2024). The second element is at issue here.

No reasonable juror could conclude that Borchert's actions were objectively unreasonable. Pearson had an extensive disciplinary history at the jail and, on the day of the incident, he was in disciplinary segregation for a destructive act. Pearson was holding his arm and a cup through the trap. That conduct posed safety risks to jail staff, including the risk that Pearson would throw waste on them. *See Jeffery v. Zenk*, No. 22-cv-641-jdp, 2024 WL 2252399, at *4 (W.D. Wis. May 16, 2024) (holding a food trap open creates security risks for prison

3

staff). Pearson continued his disruptive behavior by first banging on his cell door and then flooding his cell. Keeping Pearson in disciplinary segregation wasn't enough to stop his destructive and dangerous acts, so it was reasonable for Borchert to seek another solution. *See McCottrell v. White*, 933 F.3d 651, 663 (7th Cir. 2019) ("Deference must be accorded to prison administrators in the adoption and execution of policies and practices that are needed to preserve order and ensure institutional security."). Even then, Pearson lifted his knees off the restraint chair, further interfering with Borchert's efforts to control his behavior.

Pearson says that, once restrained, he repeatedly asked Borchert to use the bathroom. But, based on Pearson's prior conduct, removing the restrains would have posed an objective risk that he would have assaulted staff or damaged property. Pearson alleges that he didn't threaten or assault staff during the incident. But Pearson had been engaging in disruptive and aggressive conduct, and Pearson had an extensive documented history of misbehavior, including assault, threats of assault, and resisting staff. Under the circumstances, it was objectively reasonable for Borchert to believe that Pearson would continue to engage in disruptive and dangerous behavior if she removed the restraints. *Cf. Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015) ("[O]bjective reasonableness [under the Fourteenth Amendment] turns on the facts and circumstances of each particular case.").

Pearson disputes that he committed most of the conduct that resulted in his prior disciplinary violations. But Pearson doesn't genuinely dispute that he had been disciplined for that misconduct, and that Borchert knew about those violations before the incident. *See* Dkt. 46 ¶¶ 1, 3; Dkt. 54 ¶¶ 1, 3. Even if Pearson didn't commit most of the underlying conduct, those violations gave Borchert an objectively reasonable basis to believe that he was a disruptive and dangerous prisoner. *Cf. Bruscino v. Carlson*, 854 F.2d 162, 166 (7th Cir. 1988)

4

("The handcuffing, the shackling, [and] the boxing of the handcuffs . . . are reasonable measures in view of the history of violence at the prison and the incorrigible, undeterrable character of the inmates."). Pearson alleges that the records of those violations are fabricated, but he hasn't provided a foundation for this belief. *See McCoy v. Harrison*, 341 F.3d 600, 604 (7th Cir. 2003) ("[M]ere speculation or conjecture will not defeat a summary judgment motion.").

Pearson alleges that jail staff's failure to give him food, water, and toilet access justified his disruptive behavior on the day of the incident. Pearson has a constitutional right to complain about prison conditions, but that right doesn't include behavior "inconsistent with the legitimate penological interest of prison discipline and order." *See Watkins v. Kasper*, 599 F.3d 791, 798 (7th Cir. 2010). Holding a trap open, banging on a door, and breaking a sprinkler are inconsistent this interest. Even if Pearson faced serious deprivations, Borchert had an objectively reasonable basis to conclude that his behavior was disruptive and dangerous and warranted corrective action. *See id.*; *see also McCottrell*, 933 F.3d at 663.

Pearson alleges that he urinated and defecated on himself. But Pearson doesn't allege that he specifically told Borchert that he had, or was going to, soil himself. Nor does Pearson allege that he soiled himself before Borchert left at 10:00 p.m. In any case, the issue isn't whether Borchert thought that Pearson was going to soil himself. The issue is whether Borchert had an objectively reasonable basis to keep Pearson restrained for the four hours that she was at the jail, despite the risk that he could soil himself. As explained above, no reasonable juror could conclude otherwise. *Cf. Cunningham v. Eyman*, 17 F. App'x 449, 454 (7th Cir. 2001) (a prisoner's spending 16 hours in shackles and four to five hours in soiled clothing, while unpleasant, didn't violate the Eighth Amendment).

Even if a reasonable juror could conclude that Borchert violated the Fourteenth Amendment, she would be entitled to qualified immunity. Qualified immunity shields state actors from liability where their conduct does not violate clearly established constitutional rights. *Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 620 (7th Cir. 2022). In resolving questions of qualified immunity at summary judgment, courts ask: (1) whether the facts, when taken in the light most favorable to the plaintiff, show that the defendant violated a federal right; and (2) whether the right was clearly established at the time of the violation. *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (per curiam).

"A right is clearly established where it is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Stockton*, 44 F.4th at 620. In most cases, the plaintiff must identify a closely analogous controlling case finding the alleged violation unlawful, or at least a clear trend in persuasive authority showing that "recognition of the right by a controlling precedent was merely a question of time." *Id.*; *accord Reed v. Palmer*, 906 F.3d 540, 547 (7th Cir. 2018). The plaintiff bears the burden of defeating the defendant's claim to qualified immunity. *Taylor v. City of Milford*, 10 F.4th 800, 806 (7th Cir. 2021).

Pearson didn't file a brief in opposition to Borchert's motion, and his response to her proposed facts contains no legal analysis. Pearson hasn't met his burden to show that, as of May 11, 2022, it was clearly established that restraining a regularly unruly prisoner and refusing him bathroom access for four hours was an objectively unreasonable response to the disruption and danger that his conduct posed, despite the risk that he could soil himself.

I will grant Borchert's motion and dismiss Pearson's Fourteenth Amendment claim with prejudice.

ORDER

IT IS ORDERED that:

1. Defendant Sergeant Denise Borchert's motion for summary judgment, Dkt. 44, is GRANTED. Plaintiff David Anthony Pearson, Jr.'s Fourteenth Amendment conditions-of-confinement claim is DISMISSED with prejudice.

2. The clerk is directed to enter judgment and send plaintiff copies of this order and the judgment.

Entered September 4, 2024.

                                      BY THE COURT:

                                      /s/

                                      _____
                                      JAMES D. PETERSON
                                      District Judge